# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | |
|---|---|
| ANNA ENGLER, | ) |
| Plaintiff, | ) ) ) |
| v. | ) Civil Action Number: 2:21-CV-00232-KOB |
| DEVINCI'S PIZZA, INC., *et al.*, | ) ) ) |
| Defendants. | ) ) |

### RESPONSE IN OPPOSITION TO PLAINTIFF'S
### MOTION FOR PARTIAL SUMMARY JUDGMENT BY DEFENDANTS
### DE VINCI'S PIZZA, INC. AND JOHN A. DAY

Defendants John A. Day ("Day") and De Vinci's Pizza, Inc. ("De Vinci's") (collectively, "defendants") jointly submit this brief in opposition to plaintiff Anna Engler's ("Engler") motion for partial summary judgment filed in this case (doc. 29).[1]

## I.   INTRODUCTION

In essence, Engler is attempting to squeeze an undeserved second payday from an already tapped-out mom-and-pop pizza establishment. But Engler's unsupported claims cannot undo the critically important fact that she received compensation totaling more than minimum wage through a combination of cash payments and tips

---

[1] Engler only moves for summary judgment as to the claims for unpaid wages and overtime, liquidated damages, and interest pursuant to the Fair Labor Standards Act, 29 U.S.C. § 203, *et seq.* ("FLSA"). (Doc. 29).

and that she did not work over forty hours per week to qualify for overtime pay under the FLSA. Unfortunately for Engler, numerous other employees who worked with her at De Vinci's wholly undercut her unbelievable claims of near daily double shifts and long hours while earning nothing per hour. This reality is fatal to her claims.

## II. PLAINTIFF'S STATEMENT OF UNDISPUTED FACTS[2]

### A. John Day Manages the Family Business and Was Plaintiff's Employer.

1-4. Admitted for the purposes of summary judgment.

5-6. Disputed, but immaterial for the purposes of summary judgment.

7. Admitted for the purposes of summary judgment.

8. Disputed, but immaterial for the purposes of summary judgment.

9-14. Admitted for the purposes of summary judgment.

### B. Defendants Never Disclosed Their Intent to Claim Tip Credit Against Plaintiff's Wages to Pay Plaintiff a Reduced Minimum Wage.

15. Admitted for the purposes of summary judgment.

16. Disputed. Day explained how Engler would be paid. (Ex. A, Day Aff., ¶ 3; Doc. 30-2, Ex. 2, Day Dep., pp. 67:17-23, 68:1-13). This was consistent with the explanation Day provided to other servers. (Ex. A, Day Aff., ¶ 3; Ex. B, Bush Aff., ¶ 6; Ex. C, Angel-Rosas Aff., ¶ 5).

---

[2] To the extent defendants admit these facts, they do so only for the purposes of this brief and reserve the right to challenge them in any later proceedings.

### C. Defendants Never Paid Plaintiff Any Wages, Not Even the Reduced Minimum Wage.

17-18.   Disputed. Plaintiff received all of her cash and credit card tips plus an additional cash payment to compensate her for the hours she worked. (Doc. 30-2, Ex. 2, Day Dep., pp. 67:13-23, 68:1-13; Ex. A, Day Aff., ¶ 5).

19.   Admitted for the purposes of summary judgment.

20.   Disputed. Plaintiff received a cash payment at the end of each shift to compensate her for the hours she worked. The cash payment averaged between $2.20 to $2.50 per hour (doc. 30-2, Ex. 2, Day Dep., pp.64:11-12, 67:17-23, 68:1-13) and $2.20 to $5.00 per hour (Ex. A, Day Aff., ¶ 4). Although Day acknowledged he did not pay plaintiff with a payroll check (doc. 30-2, Ex. 2, Day Dep., pp. 65:13-19), he clarified his testimony to explain that he made a cash payment to plaintiff at the end of every shift she worked (id. at p. 67:17-23). See also (Ex. B, Bush Aff., ¶ 6; Ex. C, Angel-Rosas Aff., ¶ 5).

21.   Admitted Day consistently testified that he paid plaintiff in cash in an effort to help her. (Doc. 30-2, Ex. 2, Day Dep., pp. 43:20-23, 44:8, 44:12, 68:18-20, 70:5-21, 71:3-5).

### D. Defendants Failed to Keep Records of Hours Worked, Tips Earned, or Wages Paid for Plaintiff or Other Servers.

22.   Admitted Day clarified his testimony to explain that he made a cash payment to plaintiff at the end of every shift she worked as opposed to payments via

3

payroll checks. (Doc. 30-2, Ex. 2, Day Dep., p. 67:17-23). Admitted Day did not maintain records of the cash payments to plaintiff.

23. Admitted De Vinci's paid servers an hourly wage in addition to tips. Admitted De Vinci's paid plaintiff in cash instead of via payroll check.

24. Disputed. De Vinci's kept track of servers' hours because they worked a regular schedule. (Doc. 30-1, Ex. 1, Engler Dep., pp. 59:9-23, 60:1-0; Doc. 30-2, Ex. 2, Day Dep., p. 33:11-19). At the end of the shift, servers would inform Day how many hours they worked and he would pay them. (Id. at pp. 33:20-23, 34:1, 35:3-9).

25. Admitted De Vinci's did not maintain written records of schedules or hours worked for plaintiff. (Ex. A, Day Aff., ¶ 6).

26. Admitted De Vinci's did not maintain written records of schedules or hours worked for servers. (Ex. A, Day Aff., ¶ 6).

27. Disputed. Defendants have presented Day's testimony, along with the testimony of two current servers, to demonstrate that plaintiff never worked double shifts or more than twenty hours per week. (Ex. A, Day Aff., ¶ 6; Ex. B, Bush Aff., ¶ 4; Ex. C, Angel-Rosas Aff., ¶ 4).

**E.   Day Paid No Wages and No Payroll Taxes in 2019 Despite Operating a Restaurant that Earned a Gross Profit of $401,688.**

28. Admitted plaintiff did not receive a W-2 form from defendants. Disputed that plaintiff **repeatedly** tried to get Day to provide her a W-2. (Doc. 30-2, Ex. 2, Day Dep., p. 45:1-6).

29-31.	Admitted for the purposes of summary judgment.

32.	Admitted Day receives a salary from De Vinci's for serving as its full-time restaurant manager. (Doc. 30-2, Ex. 2, Day Dep., p. 59:17-21).

33-34.	Admitted for the purposes of summary judgment that the tax returns speak for themselves.

### F. Plaintiff's Damages.

35-37.	Disputed. The dinner shift generally ran from 4:00 p.m. to 9:00 p.m. (Doc. 30-2, Ex. 2, Day Dep., p. 35:10-13). The morning shift generally ran from 10:30 a.m. to 3:00 p.m. (Id. at p. 35:14-16). It was very rare for any server to work a double shift. (Id. at p. 35:17-19). Plaintiff did not work more than twenty hours per week at De Vinci's and she never worked double shifts. (Id.; Ex. A, Day Aff., ¶ 6; Ex. B, Bush Aff., ¶ 4; Ex. C, Angel-Rosas Aff., ¶ 4).

38.	Disputed. When plaintiff worked the dinner shift, she would typically work four to five hours total. (Doc. 30-2, Ex. 2, Day Dep., p. 35:10-13; Ex. A, Day Aff., ¶ 6; Ex. B, Bush Aff., ¶ 4; Ex. C, Angel-Rosas Aff., ¶ 4).

39. Disputed. Servers only performed work related to their tipped duties. (Doc. 30-2, Ex. 2, Day Dep., pp. 26:22-23, 27:1-5).

40-41.	Disputed. Plaintiff is not entitled to receive overtime pay because she did not work more than twenty hours per week at De Vinci's. (Doc. 30-2, Ex. 2, Day Dep., p. 41:13-23; Ex. A, Day Aff., ¶ 6; Ex. B, Bush Aff., ¶ 4; Ex. C, Angel-

Rosas Aff., ¶ 4). Plaintiff received at least minimum wage for each hour she worked in a combination of cash payments and tips. (Doc. 30-2, Ex. 2, Day Dep., pp. 64:9-12, 67:17-23; Ex. A, Day Aff., ¶ 6; Ex. B, Bush Aff., ¶ 4; Ex. C, Angel-Rosas Aff., ¶ 4). Accordingly, plaintiff is not entitled to any backpay, liquidated damages, or interest.

### III.     DEFENDANTS' STATEMENT OF ADDITIONAL FACTS

1.     Karli Bush ("Bush") and Mariella Angel-Rosas ("Angel-Rosas") worked as servers at De Vinci's during the time period Engler was employed by De Vinci's. (Ex. B, Bush Aff., ¶ 3; Ex. C, Angel-Rosas Aff., ¶ 3).

2.     Bush and Angel-Rosas worked with Engler and they do not recall Engler ever working a double shift. (Ex. B, Bush Aff., ¶ 4; Ex. C, Angel-Rosas Aff., ¶ 4).

3.     Engler rarely worked more than 20 hours per week. (Ex. A, Day Aff., ¶ 6; Ex. B, Bush Aff., ¶ 4; Ex. C, Angel-Rosas Aff., ¶ 4).

4.     In 2019, De Vinci's compensation structure was a combination of tips from customers and a cash payment to servers at the end of their shifts. (Ex. A, Day Aff., ¶¶ 3-5; Ex. B, Bush Aff., ¶ 5; Ex. C, Angel-Rosas Aff., ¶ 4). More specifically, Day paid servers by letting them keep tips from customers and adding a cash payment at the end of the shift along with settling the credit card tips. (Doc. 30-1, Ex. 1, Engler Dep., pp. 52:16-23, 53:1-15; Ex. A, Day Aff., ¶¶ 3-5; Ex. B, Bush Aff.,

¶ 5; Ex. C, Angel-Rosas Aff., ¶ 4).

5.     De Vinci's servers were informed of this payment method before beginning their employment with De Vinci's. (Ex. A, Day Aff., ¶ 3; Ex. B, Bush Aff., ¶ 6; Ex. C, Angel-Rosas Aff., ¶ 5); see also (Doc. 30-1, Engler Dep., p. 45:4-13 [acknowledging that she and Day likely discussed compensation]).

## IV.    ARGUMENT

In her motion for partial summary judgment, Engler fails to carry her initial burden that "there is no genuine dispute as to any material fact and [that she] is entitled to judgment as a matter of law." Fed. R. Civ. P 56(a). For two reasons, Engler is not entitled to summary judgment on her claims under the FLSA. First, Engler was paid at least the required minimum wage under the FLSA because De Vinci's is entitled to claim a tip credit. Second, Engler did not work over forty hours per week to qualify for overtime premium pay under the FLSA. At a minimum, a fact dispute exists on these issues, rendering summary judgment inappropriate.

### A.    De Vinci's Can Claim the Tip Credit Under the FLSA.

The FLSA requires a covered employer to pay its employees at least $7.25 per hour. 29 U.S.C. § 206(a). Despite this requirement, certain employers may receive credit for tips received by tipped employees.[3] 29 U.S.C. §§ 203(m)(2)(A) [tip credit],

---

[3] In her motion for partial summary judgment, Engler does not challenge her designation as a tipped employee.

203(t) [tipped employee]. Called a "tip credit," this mechanism allows for an employer to receive a credit for tips that an employee receives up to $5.12. To qualify for the tip credit, an employer must show that it notified the employee of the practice and permitted the employee to retain all tips received. 29 U.S.C. §§ 203(m)(2)(A). Once these requirements are met, the employer can then satisfy its minimum wage burden under the FLSA by compensating a tipped employee $2.13 per hour with the remaining wages paid via tips. See 29 C.F.R. § 531.59.

Here, De Vinci's satisfied the requirements to take advantage of the tip credit. To begin, De Vinci's permitted Engler to retain all of the tips she received via cash and credit card. In other words, De Vinci's did not keep any of the tips Engler received and did not impose a mandatory tip pool on her or any other server. To the extent Engler made the voluntary choice to tip other employees at De Vinci's, that was not a requirement imposed by De Vinci's or Day. (Doc. 30-2, Ex. 2, Day Dep., p. 31:3-10). Rather, any decision to share tips was a voluntary one made by Engler. (Id.). As a result, De Vinci's satisfies this element of the tip credit.

With regard to the notice element of the tip credit, this too is satisfied. De Vinci's notified Engler verbally that she would receive only a portion of her wages in cash from the company while the remainder would be paid in tips. This is consistent with the communications that De Vinci's had with other servers (i.e., Karli Bush and Mariella Angel-Rosas). Because the FLSA does not mandate a

written notice from employers, courts have correctly concluded that verbal notice is sufficient. See Puerto v. Moreno, No. 19-25282-CIV, 2021 WL 849095, at *5 (S.D. Fla. Mar. 5, 2021) ("An employer can also verbally explain to the employees that they would be paid a specific cash salary below the minimum wage and the remainder of their pay in tips."); Gutierrez v. Galiano Enterprises of Miami, Corp., No. 17-24081-CIV, 2019 WL 2410072, at *7 (S.D. Fla. June 7, 2019) (denying plaintiffs' motion for summary judgment where "there [was] conflicting evidence in the record on whether the company provided verbal notice to employees . . . [of] the company's intention to take a tip credit."). Here, Day informed plaintiff that she would be compensated through a combination of cash and tips, satisfying De Vinci's obligation to provide notice of its intent to claim the tip credit.

In an attempt to establish defendants' liability, plaintiff relies on her own testimony to show that she was not paid minimum wage.[4] Yet plaintiff's testimony is wholly insufficient to counteract the witness testimony of Day, Bush, and Angel-Rosas. These witnesses testified that De Vinci's paid servers for hours worked in addition to tips they received from customers. Day went on to explain that plaintiff

---

[4] It is also unclear from plaintiff's deposition testimony if she acknowledges receiving both an hourly wage and tips from De Vinci's. When discussing her previous employment as a server at JoJos Gastropub, plaintiff states she was paid "[h]ourly, **same way**, hourly, tips." (Doc. 30-1, Ex. 1, Engler Dep., 40:9-10) (emphasis added). Plaintiff's deposition testimony on this issue creates a question as to whether plaintiff was paid at JoJos Gastropub in the same manner she was paid at De Vinci's (i.e., hourly and tips) or if she was referring to some other employer. This is yet another credibility determination that should be reserved for a jury.

regularly received more than $100 in tips and cash payment for a standard five-hour shift, equal to roughly $20 per hour and nearly three times the minimum wage. (Ex. A, Day Aff., ¶ 5). To discount the testimony of Day, Bush, and Angel-Rosas, the Court would necessarily have to determine that they were untruthful—an improper determination at the summary-judgment stage. Accordingly, summary judgment should therefore be denied on the issue of whether plaintiff was paid minimum wage.

### B. Engler Never Worked More than 40 Hours Per Work to Earn Overtime Pay.

Plaintiff's claim for unpaid overtime similarly fails as she again relies only on her testimony to establish that she worked more than forty hours in any given week. Indeed, plaintiff goes far beyond allegations that she occasionally worked more than forty hours per week, instead claiming that she worked double shifts six to seven days each week for nearly a year without fail. (Doc. 29, p. 6). Plaintiff produces no documents or supporting witnesses to confirm these allegations. This showing does not entitle her to judgment as a matter of law.

Rather, to establish a claim for overtime pay under the FLSA, plaintiff bears the burden of proving that she performed work for which she was not properly compensated. See Estrada v. FTS USA, LLC, 688 Fed. App'x 830 (11th Cir. 2017) (affirming summary judgment for employer where employee offered only "vague and contradictory assertions regarding the work for which he was allegedly not paid"). This is true even when an employer fails to keep time records and courts

apply a relaxed burden of proof. Id. Yet, here, the only proof offered by plaintiff is her unadorned and inconsistent say-so.

As a glaring inconsistency, plaintiff's calculation of her purported overtime hours directly contradicts her deposition testimony. In her declaration and attached chart,[5] plaintiff claims that she worked "six days per week, sometimes seven days per week, and **never fewer than five days per week** unless [she] was sick or on vacation." (Doc. 30-5, Ex. 5, Engler Decl., ¶ 8) (emphasis added). However, this testimony adds an extra day to the sworn testimony provided by plaintiff during her deposition. At her deposition, plaintiff testified that "Thursday and Saturdays were [her] main off days . . . ." (Doc. 30-1, Ex. 1, Engler Dep., p. 61:8-9). But plaintiff also testified that she only worked Sundays on occasion. (Id. at p. 59:1-8). Instead of always working five days per week, plaintiff's deposition testimony states that she had Thursday and Saturday as off days and only worked Sundays occasionally when needed. Even ignoring the wealth of testimony that plaintiff typically only worked three shifts per week and never more than twenty hours, plaintiff's own statements create a fact dispute as to whether she earned any overtime pay. This fact dispute, among others, is fatal to plaintiff's motion for summary judgment.

---

[5] Of note, plaintiff's chart is not admissible in that it does not summarize the contents of any underlying records but merely presents arguments in support of plaintiff's claims that she worked overtime. As such, it is inadmissible under rule 1006 of the Federal Rules of Evidence. See Loiseau v. Thompson, O'Brien, Kemp & Nasuti, P.C., 499 F. Supp. 3d 1212, 1221 (N.D. Ga. 2020) (finding chart prepared by plaintiff to establish overtime hours was not admissible); Fed. R. Evid. 1006.

Defeating plaintiff's claims, defendants present two non-party witnesses who both testify that plaintiff worked four to five hours per shift for a total of no more than twenty hours per week. (Ex. B, Bush Aff., ¶ 4; Ex. C, Angel-Rosas Aff., ¶ 4). This is entirely consistent with Day's testimony that plaintiff would only work from 4:00 p.m. to 9:00 p.m. three days a week. (Doc. 30-2, Ex. 2, Day Dep. 35:17-19; Ex. A, Day Aff., ¶ 6). While it is true that De Vinci's did not maintain written records of plaintiff's hours, the FLSA still puts the burden of proof on her to conclusively establish an entitlement to overtime pay.[6] In this case, where the evidence consists solely of witness testimony, the dueling accounts between plaintiff and De Vinci's employees is a quintessential material fact dispute that requires a jury trial. In other words, to resolve this issue in favor of plaintiff at the summary-judgment stage, the Court will again be making a credibility determination, an outcome unsupported at

---

[6] Any alleged violation of the FLSA's recordkeeping requirements do not create a private right of action for an employee. Powell v. Florida, 132 F.3d 677, 678 (11th Cir. 1998) ("[W]e follow the decisions of the other circuits which have held that the plain language of the [FLSA] provides that the Secretary of Labor has the **exclusive right** to bring an action for injunctive relief.") (emphasis added); Williams v. Roto-Rooter Servs. Co., No. 2:18-CV-01856-JEO, 2019 WL 4687088, at *3 (N.D. Ala. Mar. 8, 2019) ("The FLSA does not, however, create a private right of action allowing an employee to enforce the employer's record-keeping obligation; rather, the right to bring such an action is vested exclusively in the Secretary of Labor. . . . [Therefore] Count One's allegation that Defendant failed to keep proper records does not state an independent claim for relief under the FLSA that is separate and distinct from his claims in Counts Two and Three for unpaid minimum wages and overtime compensation. Accordingly, Count One will be dismissed."); Jackson v. Haynes & Haynes, P.C., No. 2:16-CV-01297-AKK, 2017 WL 3173302, at *5 (N.D. Ala. July 26, 2017) ("As defendants correctly point out, no private right of action exists for [] a claim" for "fail[ing] to keep accurate records of the hours [she] worked in violation of the FLSA. . . ."). To the extent plaintiff seeks to impose FLSA liability for the sole reason that De Vinci's failed to maintain the appropriate personnel records, such a claim fails as a matter of law.

this stage of the proceedings. Accordingly, summary judgment should be denied as to plaintiff's overtime claim.

### C.     Plaintiff Cannot Establish that Defendants Acted Willfully.

In a brazen move, plaintiff seeks to proactively establish that defendants acted willfully at the summary-judgment stage. (Doc. 29, pp. 18-19). To begin, plaintiff's contention that defendants acted willfully presupposes defendants' liability. On this point, plaintiff's argument fails because she cannot first show that she is entitled to summary judgment on her FLSA claims. (See *supra* at pp. 7-12). Moreover, while it is true that De Vinci's did not maintain payroll records for plaintiff, she cannot show that defendants acted in bad faith. To the contrary, the consistent testimony from Day demonstrates that plaintiff was paid in cash in an effort to help her. (Doc. 30-2, Ex. 2, Day Dep., pp. 43:20-23, 44:8, 44:12, 68:18-20, 70:5-21, 71:3-5). Indeed, at a minimum, there is a fact dispute regarding defendants' conduct. In particular, defendants have proffered sufficient evidence to show that plaintiff was paid at the end of every shift based on the number of hours she worked. This method was clearly communicated to her when she began employment with De Vinci's. Plaintiff cannot carry the heavy burden at this stage of conclusively demonstrating that defendants violated the FLSA willfully.

## V. CONCLUSION

For these reasons, the Court should deny Engler's motion for partial summary judgment.

*S/Lauren A. Smith*
Christopher S. Rodgers (ASB-4665-G54C)
Lauren A. Smith (ASB-0432-E48S)
Stephanie M. Gushlaw (ASB-1050-F67A)

**Attorneys for defendants De Vinci's Pizza, Inc. and John A. Day**

**OF COUNSEL:**

**LANIER FORD SHAVER & PAYNE P.C.**
Post Office Box 2087
Huntsville, Alabama 35804
Telephone Number: (256) 535-1100
Facsimile Number: (256) 533-9322
Email:  csr@lanierford.com
          las@lanierford.com
          smg@lanierford.com

## CERTIFICATE OF SERVICE

I hereby certify that on the 15th day of April, 2022, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

JON C. GOLDFARB
L. WILLIAM SMITH
CHRISTINA M. MALMAT
LIESELOTTE CARMEN-BURKS
**WIGGINS, CHILDS, PANTAZIS,
 FISHER & GOLDFARB, LLC**
The Kress Building
301 19th Street North
Birmingham, Alabama 35203
Telephone: (205) 314-0500
Facsimile: (205) 254-1500
Email: jcg@wigginschilds.com
wsmith@wigginschilds.com
cmalmat@wigginschilds.com
lcarmen-burks@wigginschilds.com

*S/Lauren A. Smith*
Lauren A. Smith