FILED
2022 Jun-14  PM 03:34
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
### SOUTHERN DIVISION

| | | |
|---|---|---|
| **ANNA ENGLER,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No.: 2:21-cv-232-KOB** |
| | ) | |
| **DEVINCI'S PIZZA, INC., et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## <u>MEMORANDUM OPINION</u>

Every story has two sides. And where the two sides differ on material issues, summary judgment is inappropriate.  This Fair Labor Standards Act case comes before the court on the Plaintiff Anna Engler's "Motion for Partial Summary Judgment."  (Docs. 29 & 30).  In Counts I and II of her Complaint, Engler presents her side and claims that her employer Devinci's Pizza and its manager John Day failed to pay her the required minimum and overtime wages in violation of the FLSA.[1] (Doc. 1). Engler argues that she received only her tips as a waitress at Devinci's for the hours she worked, that the Defendants failed to pay her any wages or any required overtime pay, and that they failed to inform her that they

---

[1]  Engler's Complaint also includes claims against the Defendants for retaliation under the FLSA (Count III) and for state law claims of invasion of privacy (Count IV) and assault and battery (Count V).  (Doc. 1 at 10-12). But Engler does not move for summary judgment on those claims.

intended to count her tips as part of her wages and thus cannot claim any tip credit to reduce their minimum wage obligation.

The Defendants' side significantly contrasts with Engler's side. Although they have no wage or hour records for Engler, the Defendants claim that Engler is a tipped employee, that Day informed her that her compensation would include her tips, that they paid her the required minimum wage based on the tip credit, and that Engler did not work more than 40 hours a week, entitling her to no overtime pay. Because this case has two conflicting sides and genuine issues of material fact exist on both Engler's minimum wage and overtime claims, the court will DENY Engler's partial motion for summary judgment.

## I. Factual Background

### Undisputed Facts

Day hired Engler as a server at Devinci's in February 2019 and supervised her during her employment through March 2020. Devinci's usually employed five cooks and five servers. The Defendants had no postings in the restaurant regarding the FLSA until after Engler filed this action.

The Defendants never issued Engler a paycheck, always paid her with cash, and did not issue her a W-2 or 1099 for 2019 or 2020. In 2019, the Defendants provided 1099s to all servers except Engler. Devinci's reported "no salaries" for its 2019 tax return based on its issuance of the 1099s.

By not issuing Engler a 1099 or a W-2 that reported wages, Day "was trying to help her out."  The Defendants have no records of the dates and hours that Engler worked at Devinci's.

**Engler's Side**

Engler claims that she had "no discussions with Day about how she would be compensated prior to her taking the job."  She states in her declaration that Day "never explained to me how I would be paid" and claims that Day "never informed me that Devinci's intended to treat tips as satisfying part of the employer's minimum wage obligations."  (Doc. 30-5 at 2).

Engler testified during her deposition that, when Day hired her, she was "sure" she had discussions with him about her compensation but did not "think" he described how she would be paid and was not sure if she inquired about how she would be paid.  Engler stated that "when you go to work for somebody, you expect to be, you know, paid [$]2.13 an hour as a waitress at least—at the very least." (Doc. 29 at 3 & Doc. 30-1 at 47-48).

Engler claims that during her employment at Devinci's the Defendants compensated her only with tips and she received no hourly wage.  She would keep her cash tips and received the credit card tips in cash at the end of each shift, "minus whatever was taken out for, like, the dishwasher or the busboy."  She testified at her deposition that Day required her to tip the busboy and dishwasher

3

$20.00.  Engler stated in her declaration that some days she earned no income because she received no tips.  (Doc. 30-1 at 54, 68, 72 & Doc. 30-5 at 2).

Engler claims in her declaration that, when she began working at Devinci's in February 2019, she generally worked three shifts or around 24 hours per week because she also worked another job.  Beginning in April 2019 when she only worked at Devinci's, Engler "often worked six days per week, sometimes seven days per week, and never fewer than five days per week unless [she] was sick or on vacation."  (Doc. 30-5 at 3).

She also claims that "[a]t least three of those days would be a double-shift." Engler testified in her deposition that "if [she] ever opened" and worked the lunch shift, she "more than likely" would work a double shift.   For a double shift, she would arrive at 9:00 am and work until 10:00 or 11:00 pm.  For just the night shift, Engler arrived by 2:00 or 3:00 pm and worked until 10:00 or 11:00 pm.  (Doc. 30-1 at 51, 60 and Doc. 30-5 at 2-3).

Only one server typically worked the lunch shift, but two to four servers worked the dinner shift.  Engler stated that the servers would communicate with each other about what shifts they worked, and Engler never worked the dinner shift by herself.  (Doc. 30-1 at 60, 80).

Engler testified at her deposition about her typical work schedule at Devinci's, although she said that schedule might change from time to time.

4

Typically, she "always" worked a double shift on Monday; worked the night shift on Tuesday and Wednesday; was off on Thursday; either worked a double shift or just the night shift on Friday; was off on Saturday; and rarely worked on Sunday afternoons.  She also testified later in her deposition that she typically worked the Saturday lunch shift.  (Doc. 30-1 at 63-64).

Engler testified at her deposition that another server Jean Jordan sometimes worked the lunch shift and sometimes the night shift.  Engler testified that she and Jordan always took the overflow shifts and that she never worked with Jordan when Engler worked the Monday lunch shift.  (Doc. 30-1 at 51, 63, 92).

Because the Defendants kept no records of the dates or hours that Engler worked as a server and she maintained no records herself, Engler estimates that, from February 2019 through April 2019, she worked around 24 hours each week. From April 2019 through the end of her employment in March 2020, she estimates that she worked an average of 50 hours per week.  So, she claims that, because the Defendants are not entitled to take the tip credit, the Defendants are jointly and severally liable to her for $7.25 as minimum wage for each hour she worked up to 40 hours per week, an overtime rate of $10.875 for each hour she worked in excess of 40 hours per week, and liquidated damages.  Engler estimates that the Defendants owe her a total of $21,503.50 in backpay for violating the wage and

overtime provisions of the FLSA, not including interest compounded daily or liquidated damages.

**Devinci's and Day's Side**

In opposition to Engler's partial motion for summary judgment, the Defendants rely on Day's deposition testimony and affidavit, along with the affidavits of Karli Bush and Mariella Angel-Rosas, who both worked as servers at Devinci's during the time Engler worked there in 2019 and 2020. (Doc. 36).

In his affidavit, Day states that when he hired Engler in 2019 he "explained that her compensation would be from cash and credit card tips, and an hourly wage." His practice was to total the tips for a server at the end of the shift and then "add additional money in cash to pay them for the hours they worked." Day testified at his deposition that he did pay Engler at least $2.13 per hour or more in addition to her tips, but he has no records of those payments to Engler.[2] In his affidavit, he stated that the cash payments for the hours worked "would typically be between $2.20 and $5.00 per hour," in addition to the server's tips. And Day stated in his affidavit that "[b]etween tips and wages, Anna Engler received far more than minimum wage for each hour she worked." According to Day, Engler

---

[2] Earlier in his deposition, Engler's attorney asked Day, "And you never paid [Engler] the two thirteen an hour, right?" Day responded, "Correct." Then after a recess, Day corrected his statement and clarified that he thought the question was whether he paid the $2.13 "on the payroll" and answered no. Day explained that he "rounded up" the amount Engler received at the end of each shift. He stated that, if Engler received a hundred twenty-one dollars in tips, Day would round up to one hundred thirty to cover the four hours she worked. (Doc. 30-2 at 20-21).

receiving less than $100.00 per shift was unusual.  (Doc. 30-2 at 12, 22, 30 & Doc. 36-1 at 2-4).

Day claims that he did not impose a mandatory tip pool on Engler or any other server.  Day testified at his deposition that, if any of the servers tipped the busboy or dishwasher, they did so voluntarily and not as his direction.  (Doc. 30-2 at 11).

At the time of their affidavits in April 2022, Bush had worked as a server at Devinci's about three years, and Angel-Rosas had worked there about four years. Both Bush and Angel-Rosas state in their affidavits that, when they began working at Devinci's, Day advised them how he would pay them; Day explained to them that they would keep their cash tips, settle the credit card tips at the end of a shift, and that Day would pay additional cash to each server at the end of each shift. According to Bush and Angel-Rosas, Day would calculate the tips each server received at the end of each shift and pay an additional amount in cash over the tips to "cover the number of hours." This amount usually would be $4.00 to $5.00 per hour worked in addition to their tips.  (Doc. 36-2 at 3 and Doc. 36-3 at 2-3).

In his affidavit, Day stated that, based on the "practice" at Devinci's, Engler "would not have worked in excess of 20 hours per week during a typical workweek."  He claims in his affidavit that he has no recollection of Engler ever working 40 hours during any one week while she worked at Devinci's.  Day

testified at his deposition that Engler mostly worked the dinner shift, which

generally would be 4:00 to 9:00 pm; that Engler may have worked a lunch shift

"once in a blue moon"; and that a server working a double shift was "rare" but did

happen occasionally. (Doc. 30-2 at 12, 38 and Doc. 36-1 at 3).

Both Bush and Angel-Rosas also state in their affidavits that Engler worked

during the evening shifts.  Bush stated that she was "unaware" of Engler ever

working the lunch shift and that Jean Jordan typically opened the restaurant and

worked the lunch shift by herself in 2019-2020.  Bush also stated that Engler

worked approximately four to five hours per shift and "would not typically ever

exceed 20 hours per week, as I recall."  According to Bush, Engler "did not work

enough hours during a week to qualify for overtime."  Likewise, Angel-Rosas

stated in her affidavit that she did "not recall Anna Engler working double shifts or

ever working more than 20 hours per week."  (Doc. 36-2 at 2-3 and Doc. 36-3 at

2).

## II.    Legal Standard

Engler filed a partial motion for summary judgment on only her minimum

wage and overtime claims under the FLSA.  Summary judgment allows a trial

court to decide claims that present no genuine issues of material fact such that the

moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56. The

moving party "always bears the initial responsibility of informing the district court

of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56).

Once the moving party meets its burden of showing the district court that no genuine issues of material fact exist, the burden then shifts to the non-moving party "to demonstrate that there is indeed a material issue of fact that precludes summary judgment." *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991). In response, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material fact." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The non-moving party must "go beyond the pleadings and by [its] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a *genuine issue for trial*.'" *Celotex*, 477 U.S. at 324 (quoting Fed. R. Civ. P. 56(3)) (emphasis added).

The court must "view the evidence presented through the prism of the substantive evidentiary burden" to determine whether the nonmoving party presented sufficient evidence on which a jury could reasonably find for the nonmoving party to defeat the motion. *See Anderson v. Liberty Lobby, Inc.*, 477

U.S. 242, 254 (1986). The court must refrain from weighing the evidence and making credibility determinations, because these decisions fall to the province of the jury. *Id*. at 255.

Furthermore, the court must view all evidence and inferences drawn from the underlying facts in the light most favorable to the non-moving party. *See Graham v. State Farm Mut. Ins. Co.*, 193 F.3d 1274, 1282 (11th Cir. 1999). After both sides have addressed the motion for summary judgment, the court must grant the motion only if no genuine issues of material fact exist and if the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56.

## III.  Analysis

Engler claims that Devinci's and Day failed to pay her the required minimum and overtime wages in violation of the FLSA.  As the court will explain below, contested issues of material facts exist on both the minimum wage and overtime claims; so, the court will deny Engler's motion for partial summary judgment.

As an initial matter, Engler sues both Devinci's and Day as her employers under the FLSA.  The FLSA creates a private right of action against any "employer" who violates the act's minimum wage or overtime provisions.  29 U.S.C. § 216(b). The term "employer" under the FLSA is broad and includes a direct employer and any person "acting directly or indirectly in the interests of the

employer in relation to the employee." *See Lamonica v. Safe Hurricane Shutters, Inc.*, 711 F.3d 1299, 1309 (11th Cir. 2013) (internal quotations and citations omitted).  So, a manager with operational control can be jointly and severally liable with the employer under the FLSA for unpaid wages.  *Id*.

Defendants do not contest that both Devinci's and Day are covered employers who can be jointly and severally liable under the FLSA for Engler's alleged unpaid minimum and overtime wages.  And the record supports that both Defendants are covered employers for FLSA purposes.  So, the court will not further address that issue.

Now, the court focuses its attention on Engler and the Defendants' sides of this story to determine whether any genuine issues of material fact exist regarding the Defendants' alleged violations of the FLSA's minimum wage or overtime provisions.

**Minimum Wage Claim**

Engler claims that she received only her tips as a server and that the Defendants failed to pay her any wages, much less the required minimum wage, in addition to her tips.  Pursuant to the FLSA, a covered employer must pay its employees at least $7.25 per hour as a minimum wage.  29 U.S.C. § 206(a)(1)(C).  Engler maintains that the Defendants never paid her this required minimum wage for any of the hours she worked at Devinci's.

The Defendants admit that they did not pay Engler $7.25 per hour as a minimum wage. But they argue that, because Engler was a "tipped employee,"— i.e., one who receives more than $30 per month in tips—they were entitled to a tip credit to reduce their minimum wage obligation to at least $2.13 per hour, which they claim they paid Engler for every hour she worked.

The FLSA permits employers to apply a tip credit of up to $5.12 to satisfy the minimum wage obligation for a "tipped employee" who receives more than $30 per month in tips.  29 U.S.C. §§ 203(t), 206(a).  So, an employer must pay a "tipped employee" at least $2.13 per hour as a minimum wage, "regardless of how much money the employee earns in tips."  *P&K Restaurant Enterprise, LLC v. Jackson*, 758 F. App'x 844, 848 (11th Cir. 2019) (citing 29 U.S.C. § 203(m)).  If, in addition to the required $2.13 minimum wage, the employee does not receive enough tips to bring them to the $7.25 minimum, the employer must pay the difference; if the tips are more than enough, the employee keeps the excess tips. *Glass v. O'Conner*, 5:17-cv-80-MHH, 2018 WL 9782577 *2 (N.D. Ala. March 31, 2018).

### *Can the Defendants claim a tip-credit?*

To determine whether the Defendants failed to pay Engler the required minimum wage, the court must first address whether genuine issues of material facts exist regarding whether the Defendants are entitled to the tip credit.

The employer bears the burden to establish entitlement to the tip credit. *Barcelona v. Tiffany English Pub, Inc.*, 597 F.2d 464, 467 (5th Cir. 1979).[3]  To qualify for this tip credit, an employer must show: (1) the employee is a tipped employee; (2) the employee retained all tips she received, except when an employer requires an employee to participate in a tip pool with other employees who customarily and regularly receive tips; and (3) the employer informed the employee of the tip-credit provision.  29 U.S.C. § 203(m)(2)(A); *see also Kubiak v. S.W. Cowboy, Inc.*, 164 F. Supp. 3d 1344, 1354-55 (M.D. Fla. 2017).  If an employer fails to meet any of these preconditions, the employer cannot claim the tip credit, and the employee is "entitled to the full minimum wage for every hour worked."  *Barcelona*, 597 F.2d at 467.

Here, the parties do not dispute that Engler was a tipped employee. Regarding the second requirement that Engler retain all her tips, Engler stated in her undisputed fact section of her summary judgment motion that she would keep her cash tips and received the credit card tips in cash at the end of each shift, "*minus whatever was taken out for, like, the dishwasher or the busboy.*"  Engler's statement of undisputed fact suggests that the Defendants took some of her tips and

---

[3] Decisions of the former Fifth Circuit rendered before October 1, 1981 constitute binding precedent in the Eleventh Circuit.  *See Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc).

gave them to employees who do not regularly receive tips, which would prevent the Defendants from claiming a tip credit.

Although the Complaint alleges that Day illegally required her to pool her tips and share them with employees who did not regularly receive tips (doc. 1 at 7) and Engler included the statement above in her undisputed fact section of her motion, Engler does not include this argument as a ground for her summary judgment motion.[4]  Instead, Engler claims only that the Defendants are not entitled to the tip credit because they failed to inform her of the tip credit provisions in the FLSA and because they never paid her the required $2.13 per hour in addition to her tips.  And the court finds that genuine issues of material fact exist regarding both issues.

*Failure to Inform Engler of Intent to Claim the Tip Credit*

A genuine issue exists regarding whether the Defendants informed Engler of their intent to claim the tip credit provision.  To provide sufficient notice that the

---

[4] Even if the court construed her motion as including this argument, a genuine issue of material fact exists regarding whether Day required Engler to give some of her tips to the dishwasher or busboy.  Engler testified in her deposition that Day required her "in the beginning" to tip the busboy or dishwasher $20.00; that she "gave" part of her tips to the "dishwasher slash busboy"; and that Day never paid her anything except her tips "minus whatever was taken out" for the dishwasher or busboy.

But Day testified in his deposition that he never mandatorily required Engler or any server to pool their tips and that, if Engler gave some of her tips to the dishwasher or busboy, she did so voluntarily.  So, even if Engler vaguely raised this issue by stating in the undisputed fact section that she did not keep all her tips, a genuine issue exists as to whether Day allowed Engler to keep all her tips or whether he required her to give some of her tips to employees who did not regularly receive tips from customers.

employer intends to take a tip credit against her wages under the FLSA, the

employer must "inform" its employee that it intends to do so.  *Rafferty v. Denny's,*

*Inc.*, 13 F.4th 1166, 1172 (11th Cir. 2021) (the tip credit "can be applied only to

those tipped employees whom the employer has informed of § 203(m)(2)(A)").

    One way an employer can meet the obligation to inform employees of the tip

credit provision is by displaying a poster at the business that contains the required

information.  *Nail v. Shipp*, 17-00195-KD-B, 2019 WL 3719397 *6 (S.D. Ala.

2019) (also citing other district courts in the Eleventh Circuit that have concluded

that such a poster satisfies the notice requirement).  But, in this case, the

Defendants do not dispute that they failed to display a poster including the tip

credit provision when Engler worked at Devinci's.

    However, to satisfy this "inform" requirement, an employer also can

*verbally* inform an employee that the employer would pay a cash salary below the

minimum wage in addition to allowing the employee to keep all her tips.  *See*

*Puerto v. Moreno*, 19-25282-Civ-Scola, 2021 WL 849095 * 5 (March 5, 2021 S.D.

Fla.) (an employer can verbally inform employees "that they would be paid a

specific cash salary below the minimum wage and the remainder of their pay in

tips").  Employers do not have to "explain" the tip credit to the employees in detail,

but must "inform them" of it, which "requires less effort" than explaining the tip

credit to them.  *Nail*, 2019 WL 3719397 at *5 (quoting *Pellon v. Business Rep. Int.,*

*Inc.*, 528 F. Supp 2d 1306, 1309-1310 (S.D. Fla. 2007), *aff'd* 291 F. App'x 310 (11th Cir. 2008) (internal quotations marks omitted).

Engler argues that Day's affidavit does not specifically say that he informed Engler of his intent to treat tips as satisfying part of the employer's minimum wage obligations. But Day claims in his affidavit that when he hired Engler in 2019 he "explained that her compensation would be from cash and credit card tips, and an hourly wage." And Day testified in his deposition that he paid Engler at least $2.13 per hour in addition to tips and that he paid Engler between $2.20 and $5.00 per hour as a cash wage to cover the hours that she worked in a shift. Considering all the evidence in the light most favorable to the Defendants, a jury could reasonably infer that Day had a conversation with Engler when he hired her about her compensation and that Day told Engler that her pay would include her tips and an hourly wage less than minimum wage.

To be sure, Day's sworn statement does not specifically state the amount of the "hourly wage" or use the term "tip-credit." But Day's claim that he told Engler that her compensation would consist of her tips and an hourly *wage* and his testimony that he paid her a minimum hourly wage of at least $2.13 create a genuine issue of material fact whether Day satisfied his obligation to "inform" Engler of his intent to offset the minimum wage with the tip-credit.

And, although Engler stated in her declaration that she never had any conversations with Day regarding how he would compensate her, she also testified in her deposition that, when Day hired her, she was "sure" she had discussions with him about her compensation but did not "think" he described how she would be paid and was not sure if she inquired about how she would be paid. Either Engler had discussions with Day about her compensation before she started working at Devinci's or she did not. But based on Engler's sworn statements seemingly in contradiction with each other, the court is unsure if Day in fact had a conversation with Engler about how the Defendants would compensate her and the substance of that conversation.

So, the court finds that genuine issues of material fact exist regarding whether the Defendants met their requirement to inform Engler of their intent to use the tip-credit.

### *Failure to Pay the Minimum Wage Based on the Tip Credit*

And the court also finds that a genuine issue of material fact exists regarding whether the Defendants in fact paid Engler at least $2.13 as a minimum cash wage for each hour she worked in addition to allowing her to keep her tips.

Engler claims that the Defendants never paid her any wages and she received only tips for working as a server at Devinci's. Although the Defendants have the burden to show they are entitled to the tip credit, Engler bears the burden

to prove that she performed work for which the Defendants did not properly compensate her. *See Rafferty v. Denny's Inc.*, 13 F.4th 1166, 1190 (11th Cir. 2021); *Lamonica v. Safe Hurricane Shutters, Inc.*, 711 F. 3d 1299, 1315 (11th Cir. 2013).

But the employer has the duty to maintain accurate records and "keep track of the employee's *wages*, hours, and other conditions of employment." *Rafferty v. Denny's, Inc.*, 13 F.4th 1166, 1172 (11th Cir. 2021). So, where the employer's records regarding wages are "inaccurate or inadequate," or as in this case do not exist, the employer carries her burden by producing "sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference." *P&K Restaurant Enterprise, LLC v. Jackson*, 758 F. App'x 844, 848 (11th Cir. 2019). Then, the burden shifts to the employer to negate the reasonableness of the inference to be drawn from the employee's evidence. *Id*. (applying this burden shifting in the context of an employer's failure to pay the required minimum wage).

Engler claims that the Defendants paid her no wages, much less the required minimum wage of $2.13, and that she received only tips for the hours she worked at Devinci's. Although the Defendants acknowledged their failure to maintain adequate records regarding Engler's wages, Day testified that he paid Engler at least $2.13 per hour in cash at the end of each shift in addition to her tips. And

Day stated in his affidavit that he paid Engler somewhere between $2.20 and $5.00 cash per hour as wages in addition to her tips at the end of each shift.  Both Bush and Angel-Rosas' affidavits support Day's statements that he paid servers a cash wage of around $4.00 to $5.00 at the end of each shift in addition to their tips.

Considering the evidence in the light most favorable to the Defendants, a jury could reasonably infer that Day paid Engler an additional amount of cash as hourly wages at the end of each shift to satisfy the minimum wage obligation and that the amount of cash wages Day paid per hour to Engler was at least $2.13 but varied based on the amount of tips she received each night.  And Day stated in his affidavit that "[b]etween tips and wages, Anna Engler received far more than minimum wage for each hour she worked."

So, although the jury ultimately may not believe Day and question his failure to maintain records of the specific amounts that he paid Engler at the end of each shift, a genuine issue of material fact exists as to whether the Defendants in fact paid Engler at least $2.13 per hour as a minimum cash wage for each hour she worked at Devinci's.  The Defendants have produced enough evidence that, if believed, could negate the reasonableness of Engler's evidence regarding whether she received at least $2.13 as a minimum wage for each hour she worked at Devinci's.  So, summary judgment on this issue is inappropriate.

**Overtime Claim**

Engler also claims that the Defendants failed to pay her overtime wages to which she was entitled in violation of the FLSA.  For her unpaid overtime claim under the FLSA, again Engler bears the burden to prove that she worked overtime without compensation.  *See Allen v. Board of Public Educ. For Bibb County*, 495 F.3d 1306, 1315 (11th Cir. 2007).

As the court explained regarding the Defendants' alleged failure to pay the required minimum wage, when the employer fails to maintain records of the employee's hours worked and the employee has no documentation of the "precise hours she worked," she can satisfy her relaxed burden by producing "sufficient evidence" to show the number of hours worked "as a matter of just and reasonable inference."  *Rafferty*, 13 F.4th at 1191 (quoting *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687 (1946) (superseded by statute on other grounds, Portal-to-Portal Act of 1947).  The burden then shifts to the employer to "produce either evidence of the specific amount of work the employee performed *or* evidence that tends to refute the reasonableness of the inference the employee seeks for the fact-finder to draw from her evidence."  *Rafferty*, 13 F.4th at 1191 (citing *Allen,* 495 F.3d at 1316) (emphasis added).

Here, Engler claims that, from April 2019 through the end of her employment with Devinci's in March 2020, she worked an average of 50 hours six or seven days a week, including at least three double shifts, and that the Defendants failed to pay her the required overtime wages.  She claims that nothing in the record disputes her claim regarding the number of hours she worked each week.

First, the court notes that Engler's own deposition testimony seems to dispute to some degree her declaration statement that she worked six or seven days a week and at least three double shifts.  Engler testified at her deposition that *typically* she "always" worked a double shift on Monday from 9:00 am until 10:00 or 11:00 pm; worked the night shift on Tuesday and Wednesday from 2:00 or 3:00 pm until 10:00 or 11:00 pm; was off on Thursday; either worked a double shift or just the night shift on Friday; was off on Saturday but also stated that she typically worked the Saturday lunch shift; and rarely worked on Sunday afternoons. So, according to Engler's testimony regarding her typical schedule that could change from time to time, she usually worked only around five days a week and maybe two double shifts.

And Engler's argument that neither Day, Bush, nor Angel-Rosas's affidavits dispute Engler's declaration that she worked six or seven days a week or her specific arrival or departure times fails.  Day specifically stated in his affidavit that,

21

based on the "practice" at Devinci's, Engler would not have worked more than 20 hours per week.  Day also testified in his deposition that Engler mostly worked the dinner shift, which generally would be 4:00 to 9:00 pm; that Engler may have worked a lunch shift "once in a blue moon"; and that a server working a double shift was "rare" but did happen occasionally.  As the manager of only about five servers, a jury could infer that Day would know if one of his servers worked fifty hours over six or seven days a week, especially when his practice was to have only part-time employees.

And both Bush and Angel-Rosas's affidavits confirm Day's testimony that Engler worked only around 20 hours per week.  Bush stated that she was "unaware" of Engler ever working the lunch shift; that Jean Jordan typically opened the restaurant and worked the lunch shift by herself in 2019-2020; that Engler worked approximately four to five hours per shift and "would not typically ever exceed 20 hours per week, as I recall"; and that Engler did not work enough hours to qualify for overtime wages.  And Angel-Rosas did "not recall Anna Engler working double shifts or ever working more than 20 hours per week."

Engler argues that Bush and Angel-Rosas' affidavits offer only "vague conclusory assertions completely lacking in evidentiary support, with no indication of any basis for the witness's claimed personal knowledge as to [Engler's] work schedule or her total hours worked."  And Engler argues that the fact that Bush and

Angel-Rosas do not *recall* Engler working more than 20 hours a week does not contradict that she in fact did work 50 hours a week.  The court disagrees.

Engler herself testified that all the servers communicated with each other about what shifts they worked. And only about five servers worked at Devinci's at any given time.  So, a jury could infer that both Bush and Angel-Rosas who worked at Devinci's as servers with Engler would have personal knowledge of the shifts that Engler worked, although they would not have specific records of Engler's hours.  And if Jean Jordan typically worked the lunch shift alone and Engler never worked the dinner shift alone, a jury could reasonably infer that Engler worked with Bush and Angel-Rosas during the dinner shift.  So, Bush and Angel-Rosas would arrive for the dinner shift at the same time as Engler if they worked with her on any given shift and presumably would know if Engler had worked the earlier lunch shift also.

And a jury could also infer that, if the practice at Devinci's was for servers to work only part-time, both Bush and Angel-Rosas also worked only part-time. So, if the five or so servers communicated with each other about which shifts they worked, both Bush and Angel-Rosas would remember if Engler worked 50 hours each week, which would presumably be way more hours each week than they worked.

So, the court finds that the Defendants have produced sufficient evidence that, if believed, could negate the reasonableness of Engler's evidence regarding how many hours she worked each week.  The Defendants' evidence creates a genuine issue of material fact as to whether Engler worked enough hours to qualify for overtime wages.

**IV.    Conclusion**

For the reasons explained above, the court will DENY Engler's partial motion for summary judgment.

The court will enter a separate order doing so.

DONE and ORDERED this 14th day of June, 2022.

**KARON OWEN BOWDRE**
UNITED STATES DISTRICT JUDGE