FILED

2022 Oct-07  PM 07:20
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF ALABAMA SOUTHERN DIVISION

| | | |
|---|---|---|
| **ANNA ENGLER,** | ) | |
| | ) | |
| | ) | |
| **PLAINTIFF,** | ) | **CIVIL ACTION NO.:** |
| | ) | |
| **v.** | ) | |
| | ) | **JURY DEMAND** |
| **DEVINCI'S PIZZA, INC. AND** | ) | **2:21-CV-00232-KOB** |
| **JOHN A. DAY,** | ) | |
| | ) | |
| **DEFENDANTS.** | ) | |

## JOINT PROPOSED JURY INSTRUCTIONS

1

**[Court's Standard Instructions Omitted]**

Defendants' Proposed Instruction:

## 3.3 Consideration of Direct and Circumstantial Evidence; Argument of Counsel; Comments by the Court

As I said before, you must consider only the evidence that I have admitted in the case. Evidence includes the testimony of witnesses and the exhibits admitted. But, anything the lawyers say is not evidence and isn't binding on you.

You shouldn't assume from anything I've said that I have any opinion about any factual issue in this case. Except for my instructions to you on the law, you should disregard anything I may have said during the trial in arriving at your own decision about the facts.

Your own recollection and interpretation of the evidence is what matters.

In considering the evidence you may use reasoning and common sense to make deductions and reach conclusions. You shouldn't be concerned about whether the evidence is direct or circumstantial.

"Direct evidence" is the testimony of a person who asserts that he or she has actual knowledge of a fact, such as an eyewitness.

1

"Circumstantial evidence" is proof of a chain of facts and circumstances that tend to prove or disprove a fact. There's no legal difference in the weight you may give to either direct or circumstantial evidence.

2

Defendants' Proposed Instruction

### 3.5.1 Impeachment of Witnesses Because of Inconsistent Statements

You should also ask yourself whether there was evidence that a witness testified falsely about an important fact. And ask whether there was evidence that at some other time a witness said or did something, or didn't say or do something, that was different from the testimony the witness gave during this trial.

But keep in mind that a simple mistake doesn't mean a witness wasn't telling the truth as he or she remembers it. People naturally tend to forget some things or remember them inaccurately. So, if a witness misstated something, you must decide whether it was because of an innocent lapse in memory or an intentional deception. The significance of your decision may depend on whether the misstatement is about an important fact or about an unimportant detail.

### 3.5.2 Impeachment of Witnesses Because of Inconsistent Statements or Felony Conviction[1]

You should also ask yourself whether there was evidence that a witness testified falsely about an important fact. And ask whether there was evidence that at some other time a witness said or did something, or didn't say or do something, that was different from the testimony the witness gave during this trial.

To decide whether you believe a witness, you may consider the fact that the witness has been convicted of a felony or a crime involving dishonesty or has made a false statement.

But keep in mind that a simple mistake doesn't mean a witness wasn't telling the truth as he or she remembers it. People naturally tend to forget some things or remember them inaccurately. So, if a witness misstated something, you must decide whether it was because of an innocent lapse in memory or an intentional deception. The significance of your decision may depend on whether the misstatement is about an important fact or about an unimportant detail.

---

[1] Defendants objects to the inclusion of this instruction because the only felony conviction on record in this matter should not be admitted at trial.

4

Defendants' Proposed Instruction:

## 3.7.1 Responsibility for Proof – Plaintiff's Claims – Preponderance of the Evidence

In this case it is the responsibility of the Plaintiff to prove every essential part of her claims by a "preponderance of the evidence." This is sometimes called the "burden of proof" or the "burden of persuasion."

A "preponderance of the evidence" simply means an amount of evidence that is enough to persuade you that Plaintiff's claim is more likely true than not true.

If the proof fails to establish any essential part of a claim or contention by a preponderance of the evidence, you should find against Plaintiff.

When more than one claim is involved, you should consider each claim separately.

In deciding whether any fact has been proved by a preponderance of the evidence, you may consider the testimony of all of the witnesses, regardless of who may have called them, and all of the exhibits received in evidence, regardless of who may have produced them.

If the proof fails to establish any essential part of Plaintiff's claims by a preponderance of the evidence, you should find for the Defendants as to that claim.

1

Defendants' Proposed instruction:[23]

## 4.14 Fair Labor Standards Act – 29 U.S.C. §§ et seq.

For the first element, Engler must prove by a preponderance of the evidence that she was an employee employed by an enterprise engaged in commerce or in the production of goods for commerce.

The term "commerce" has a very broad meaning and includes any trade, transportation, transmission, or communication between any place within a state and any place outside that state. Engler was engaged in the "production of goods" if she was employed in producing, manufacturing, mining, handling, or transporting goods, or in any other manner worked on goods or any closely related process or occupation directly essential to the production of goods. An "enterprise engaged in

---

[2] We submit this proposed instruction because it is consistent with the Eleventh Circuit Pattern Jury Instruction's presentation.

[3] Plaintiff objects to instructing the jury on these issues, as it is undisputed that Defendants' revenue exceeded $500,000; Defendant has filed a motion *in limine* seeking to exclude evidence of its financial condition. Defendants have also stipulated in the pretrial to facts establishing the "handling … of materials … that have been moved in or produced for commerce…" and the instruction is inaccurate and incomplete: "An employer falls under the enterprise coverage section of the FLSA if it 1) 'has employees engaged in commerce or in the production of goods for commerce, or that has employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person' and 2) has at least $500,000 of 'annual gross volume of sales made or business done.'" *Polycarpe v. E & S Landscaping Serv.*, 616 F.3d 1217, 1220 (11th Cir. 2010) (quoting 29 U.S.C. § 203(s)(1)(A)).

commerce or the production of goods for commerce" means a business that has employees engaged in commerce or the production of commercial goods for commerce and has annual gross sales of at least $500,000.

Minimum Wage Claim:

Minimum wage claim: The minimum wage required by the FLSA during the period involved in this case was $ 7.25 per hour. To determine whether the employers have paid the minimum wage, they are entitled to a credit for the reasonable costs of furnishing certain non-cash items to Engler's unless those costs are excluded from Engler's wages under the terms of a union contract that applies to Engler such as meals and lodging for the employee's benefit, and the employee voluntarily accepts them.

4

Overtime Claim:[4]

The FLSA requires an employers to pay an employee at least one-and-one-half times the employee's "regular rate" for time worked over 40 hours in a workweek. Put another way, if an employee works more than 40 hours in one workweek, the employers must pay the employee the overtime rate of 1.5 times the regular rate for all time worked after the first 40 hours. This is commonly known as time-and-a-half pay for overtime work.

The employee's regular rate for one week is the basis for calculating any overtime pay due to the employee. The "regular rate" for a week is determined by dividing the total wages paid for the week by 40/the total number of hours Engler's weekly salary was intended to compensate.

To calculate how much overtime pay was owed to Engler for a certain week, subtract 40 from the total number of hours she worked and multiply the difference by the overtime rate DeVinci's / John Day failed to pay Engler the required pay if they paid her less than that amount.]

---

[4] Plaintiff objects to this instruction regarding the "regular rate" as Plaintiff was not a misclassified salaried employee; this instruction therefore does not apply to the facts of the case.

Plaintiff's Proposed Instruction

## 4.14 Fair Labor Standards Act – 29 U.S.C. §§ 201 et seq.

Minimum wage claim: The minimum wage required by the FLSA during the period involved in this case was $ 7.25 per hour.

**Tip Credit Requirements.**

Minimum wage may be offset by employers who qualify for a "tip credit" under the FLSA. A tip credit allows an employer to pay a lower direct hourly wage by receiving credit for tips that an employee receives up to $5.12 per hour. To establish that De Vinci's and/or John Day were entitled to claim a tip credit under the FLSA, De Vinci's and/or John Day must prove each of the following facts by a preponderance of the evidence:

First: Ms. Engler was engaged in an occupation in which she customarily and regularly received tip income and was therefore a "tipped employee" under the FLSA;

Second: De Vinci's and/or John Day notified Ms. Engler of the tip credit, either verbally or in writing;

Third: That De Vinci's and/or John Day allowed Ms. Engler to retain all tips she received;

Fourth: That Ms. Engler received enough money in tips, that when added to her direct hourly wage, her wage met the applicable minimum wage.

7

**Tip Credit – Measure of Damages and Burden of Proof[5]**

If an employer fails to comply with the tip credit requirements, the employer is liable to tipped employees for the difference between the minimum wage and the wage paid to tipped employees, if any, regardless of the tips that tipped employees received. The burden is on the employer to establish entitlement to the tip credit. Otherwise the employee is entitled to the full minimum wage for every hour worked.

Authority: *Ventura v. Bebo Foods, Inc*., 738 F. Supp. 2d 8, 17 (D.D.C. 2010); *Nail v. Shipp*, No. 17-00195-KD-B, 2019 U.S. Dist. LEXIS 132072, at \*14-15 (S.D. Ala. Aug. 6, 2019) (*quoting Barcellona v. Tiffany English Pub, Inc*., 597 F.2d 464, 467 (5th Cir. 1979); see also *Ash v. Sambodromo, LLC*, 676 F. Supp. 2d 1360, 1369 (S.D. Fla. 2009).

---

[5] Defendants challenge this jury instruction on the grounds that the case law cited is out-of-circuit and is not included in any Eleventh Circuit pattern instructions.

**Requirement of Payment of Wages as Prerequisite to Tip Credit.**

Employers claiming a tip credit still must directly pay their tipped employees a direct wage of at least $2.13 an hour. If the employer fails to do so, it is not entitled to claim the tip credit against its minimum wage obligations.

*P&K Rest. Enter., LLC v. Jackson*, 758 F. App'x 844, 849 (11th Cir. 2019).

9

**Tip Credit Notice Requirements**

Federal law provides that the "tip credit" provisions "shall not apply with respect to any tipped employee unless such employee has been informed by the employer of the provisions of this subsection…" To satisfy this requirement, "an employer must inform its employees that it intends to treat tips as satisfying part of the employer's minimum wage obligations."

An employer may not rely on general industry awareness to satisfy the notice requirement. Regardless of the employee's past employment, the FLSA demands the employer inform the employee of the tip credit's application to his subsequent employment. The employee's previous knowledge of the tip credit provision is irrelevant to the defense.

Source: 29 USC §203(m)(2)(A); *Bernal v. Vankar Enters*., 579 F. Supp. 2d 804, 809 (W.D. Tex. 2008). See also *Dominguez v. Don Pedro Rest.*, No. 2:06-cv-241, 2007 U.S. Dist. LEXIS 72444, 2007 WL 2884370, at *2 (N.D. Ind. Sept. 26, 2007)

10

**Non-Tipped Work**

An employer may take a tip credit for non-tipped work that supports the tipped occupation, such as dining room prep work, refilling condiments, or rolling silverware. However, if the amount of such work exceeds twenty percent of the workweek, the employer may not claim the tip credit. The employer also may not claim the tip credit where any period of such work lasts more than thirty minutes.

An employer may not claim the tip credit for any time spent doing work that is not part of the tipped occupation, such as preparing food, including salads, and cleaning the kitchen or bathrooms.

Source: 29 CFR 531.56

11

Plaintiff's Proposed Jury Instruction:

**4.14 Fair Labor Standards Act – 29 U.S.C. §§ 201 et seq.**

Overtime claim: The FLSA requires employers to pay an employee at least one-and-one-half times the employee's "regular rate" for time worked over 40 hours in a workweek. Put another way, if an employee works more than 40 hours in one workweek, the employers must pay the employee the overtime rate of 1.5 times the regular rate for all time worked after the first 40 hours. This is commonly known as time-and-a-half pay for overtime work.

12

Defendants' Proposed Jury Instruction:[6]

## 4.14 Fair Labor Standards Act – 29 U.S.C. §§ 201 et seq.

Overtime claim: The FLSA requires employers to pay an employee at least one-and-one-half times the employee's "regular rate" for time worked over 40 hours in a workweek. Put another way, if an employee works more than 40 hours in one workweek, the employers must pay the employee the overtime rate of 1.5 times the regular rate for all time worked after the first 40 hours. This is commonly known as time-and-a-half pay for overtime work.

The employee's regular rate for one week is the basis for calculating any overtime pay due to the employee. The "regular rate" for a week is determined by dividing the total wages paid for the week by the total number of hours Ms. Engler's weekly salary was intended to compensate. If you find Ms. Engler was a tipped employee, then her regular rate of pay should include the amount of tip credit taken by De Vinci's per hour minus the cash wage paid to Ms. Engler. To calculate how much overtime pay was owed to Ms. Engler for a certain week, subtract 40 from the

---

[6] Plaintiff objects to the second paragraph of this instruction. Ms. Engler was not paid a "salary" and so this definition of regular rate of pay does not apply to the facts of this case. Moreover, the statement that the regular rate should include "the amount of tip credit taken by De Vinci's per hour minus the cash wage paid to Ms. Engler" does not appear to be an accurate statement of the law and in any event is highly likely to confuse the jury.

13

total number of hours she worked and multiply the difference by the overtime rate. De Vinci's failed to pay Ms. Engler the required overtime pay if they paid her less than that amount.

Authority: 29 CFR 778.415 through 778.421.

14

## 4.14 Fair Labor Standards Act – 29 U.S.C. §§ 201 et seq.

The amount of damages for minimum wage and/or overtime violations is the difference between the amount Ms. Engler should have been paid and the amount she was actually paid.  Ms. Engler is entitled to recover lost wages from the date of your verdict back to no more than two years before she filed this lawsuit, which she filed on February 15, 2021.

15

## 4.14 Fair Labor Standards Act – 29 U.S.C. §§ 201 et seq.

Inadequate Records: The law requires employers to keep records of how many hours their employees work and the amount they are paid. In this case, Ms. Engler claims that DeVinci's and John Day failed to keep and maintain adequate records of her hours and pay. Ms. Engler also claims that DeVinci's and John Day's failure to keep and maintain adequate records has made it difficult for Ms. Engler to prove the exact amount of her claim.

If you find that DeVinci's and John Day failed to keep adequate time and pay records for Ms. Engler and that Ms. Engler performed work for which she should have been paid, Ms. Engler may recover a reasonable estimation of the amount of her damages. But to recover this amount, Ms. Engler must prove by a preponderance of the evidence a reasonable estimation of the amount and extent of the work for which she seeks pay.

16

**Recordkeeping Requirements[7]**

The employer must keep records showing "[h]ours worked each workday and total hours worked each workweek," "[t]otal daily or weekly straight-time earnings or wages due for hours worked during the workday or workweek, exclusive of premium overtime compensation," "[t]otal premium pay for overtime hours," "[t]otal additions to or deductions from wages paid each pay period including employee purchase orders or wage assignments," "[t]otal wages paid each pay period," and "[d]ate of payment and the pay period covered by payment."

For tipped employees, regulations require more detailed records, including weekly or monthly amounts of tips received, as well as the amount by which the wages of each tipped employee have been deemed to be increased by tips as determined by the employer.

Source: 29 C.F.R. § 516.2; *P&K Rest. Enter., LLC*, 758 F. App'x at 848 (quoting 29 C.F.R. § 516.28).

---

[7] Defendants believe that the previous jury instruction, 4.14, adequately covers this area of the law and dispute that this jury instruction should be read to the jury. However, if the Court disagrees, defendants propose a jury instruction quoting the exact language of the C.F.R.

17

## Inadequate Records – Burden Shifting[8]

The FLSA places upon the employee-plaintiff "the burden of proving that he performed work for which he was not properly compensated." However, if the employer failed to keep time records that burden is relaxed. Specifically, in that circumstance, the Supreme Court has held that "'where the employer's records are inaccurate or inadequate,' an employee 'has carried out his burden if he proves that he has in fact performed work for which he was improperly compensated and if he produces sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference.'" "The burden then shifts to the employer to prove 'the precise amount of work performed' or to 'negative the reasonableness of the inference to be drawn from the employee's evidence.'" If the employer fails to meet this burden, the jury may rely on Ms. Engler's estimate of the amount and extent of work that she performed.

Source: *Lamonica v. Safe Hurricane Shutters, Inc*., 711 F. 3d 1299 (11th Cir. 2013); *P&K Rest. Enter., LLC v. Jackson*, 758 F. App'x 844, 848 (11th Cir. 2019) (quoting *Anderson v. Mt. Clemens Pottery Co*., 328 U.S. 680, 687 (1946).

---

[8] Defendants dispute this jury instruction.

## 4.14 Fair Labor Standards Act – 29 U.S.C. §§ 201 et seq.

Individual Liability: An individual can also be liable for a plaintiff's damages under the FLSA if the individual played a substantial role in causing the FLSA violation. To determine whether the individual is liable, you must consider all the relevant circumstances rather than any one technical factor.  Ms. Engler must prove that John Day had operational control over DeVinci's. In other words, John Day must have controlled significant aspects of DeVinci's day-to-day functions, including employee compensation, or had direct responsibility for the supervision of Ms. Engler.

19

## 4.22 Retaliation – Section 1981, Title VII, ADEA, ADA, and FLSA (modified to remove language applicable only to complaints of discrimination).

In this case, Ms. Engler claims that DeVinci's and/or John Day retaliated against her because she took steps to enforce her lawful rights under the Fair Labor Standards Act.

The Fair Labor Standards Act prohibits an employer from taking any retaliatory action against an employee because the employee has asserted rights or made complaints under that statute.

To succeed on her claim, Ms. Engler must prove each of the following facts by a preponderance of the evidence:

First: Ms. Engler engaged in a protected activity;

Second: DeVinci's and/or John Day then took an adverse employment action;

Third: DeVinci's and/or John Day took the adverse employment action because of Ms. Engler's protected activity; and

Fourth: Ms. Engler suffered damages because of the adverse employment action.

In the verdict form that I will explain in a moment, you will be asked to answer questions about these factual issues.

For the first element, Ms. Engler claims that she engaged in protected activity when she asked John Day to pay her at least $2.13 an hour or minimum wage. That

action is "protected activity" if it was based on Ms. Engler's good-faith, reasonable belief that DeVinci's and/or John Day were not complying with the Fair Labor Standards Act. Ms. Engler had a "good faith" belief if she honestly believed that DeVinci's and/or John Day were not complying with the Fair Labor Standards Act. Ms. Engler had a "reasonable" belief if a reasonable person would, under the circumstances, believe that DeVinci's and/or John Day were not complying with the Fair Labor Standards Act.  Ms. Engler does not have to prove that DeVinci's and/or John Day actually were not complying with the Fair Labor Standards Act. But she must prove that she had a good-faith, reasonable belief that DeVinci's and/or John Day were not complying with the law.

For the second element, Ms. Engler claims that DeVinci's and/or John Day took an adverse employment action against her when Defendants did not rehire her after the restaurant reopened following a temporary closure during the Covid-19 pandemic. You must decide whether this was an adverse employment action.

An "adverse employment action" is any type of action that would have made a reasonable employee reluctant to make or support a charge of discrimination. Put another way, if a reasonable employee would be less likely to complain about or oppose alleged discrimination because she knew that her employer would fail to rehire her when the restaurant reopened following a temporary closure during the Covid-19 pandemic, then that action is an adverse employment action. If the

employment action would not make it less likely for a reasonable employee to make complaints about or oppose the alleged discrimination, it is not an adverse employment action.

For the third element, if you find that Ms. Engler engaged in protected activity and that DeVinci's or John Day took an adverse employment action against her, you must decide whether DeVinci's or John Day took that action because of Ms. Engler's protected activity. Put another way, you must decide whether Ms. Engler's protected activity was the main reason for DeVinci's or John Day's decision.

To determine that DeVinci's or John Day took an adverse employment action because of Ms. Engler's protected activity, you must decide that DeVinci's or John Day would not have taken the action had Ms. Engler not engaged in the protected activity but everything else had been the same.

DeVinci's or John Day claims that they did not fail to rehire Ms. Engler because of Ms. Engler's protected activity, and that they took the action for other reasons. An employer may not take an adverse action against an employee because of the employee's protected activity. But an employer may fail to rehire an employee for any other reason, good or bad, fair or unfair. If you believe DeVinci's and John Day's reasons for their decision, and you find that DeVinci's or John Day did not make their decision because of Ms. Engler's protected activity, you must not second

guess that decision, and you must not substitute your own judgment for DeVinci's or John Day's judgment – even if you do  not agree with it.

For the fourth element, you must decide whether DeVinci's or John Day's acts were the proximate cause of damages that Ms. Engler sustained. Put another way, you must decide, if DeVinci's or John Day had not failed to rehire Ms. Engler, would these damages have occurred?

**4.10 Damages for FLSA Retaliation**

If you find that DeVinci's or John Day's acts were the proximate cause of damages that Ms. Engler sustained, you must determine the amount of damages.

When considering the issue of Ms. Engler's compensatory damages, you should determine what amount, if any, has been proven by Ms. Engler by a preponderance of the evidence as full, just and reasonable compensation for all of Ms. Engler's damages as a result of DeVinci's and John Day's failure to rehire her, no more and no less. Compensatory damages are not allowed as a punishment and must not be imposed or increased to penalize DeVinci's and John Day. Also, compensatory damages must not be based on speculation or guesswork.

You should consider the following element of damage, to the extent you find that Ms. Engler has proved it by a preponderance of the evidence, and no others: net lost wages and benefits from the date DeVinci's failed to rehire Ms. Engler to the date of your verdict.

**Willful Violation:** Ms. Engler also claims that DeVinci's willfully violated the law. You will only consider this issue if you find for Ms. Engler and award her compensatory damages.

If DeVinci's or John Day knew that their failure to rehire Ms. Engler violated the law, or acted in reckless disregard of that fact, then their conduct was willful. If DeVinci's and John Day did not know, or knew only that the law was potentially

applicable, and did not act in reckless disregard about whether the law prohibited its conduct, their conduct was not willful.

**State Law Claims – Employer Liability**.[9]

Ms. Engler also asserts state law claims against DeVinci's and John Day, some of which are based on the acts of DeVinci's employee, John Day. Where, as here, the Defendant DeVinci's is a company, and Mr. Day, the person allegedly committing the wrongful conduct, was DeVinci's employee, in order to hold DeVinci's liable Ms. Engler must prove first that Mr. Day committed the legally wrongful acts she alleges AND that DeVinci's is liable for the acts of Mr. Day. She can establish that DeVinci's is liable for Mr. Day's acts by reasonably satisfying you from the evidence that either (1) Mr. Day committed the wrongful acts in the line and scope of his employment; OR (2) DeVinci's participated in, authorized, or ratified Mr. Day's legally wrongful acts.

For DeVinci's to ratify Mr. Day's wrongful acts, it must either expressly adopt his behavior or implicitly approve it. To show implicit approval, Ms. Engler must reasonably satisfy you by the evidence that DeVinci's (1) had actual knowledge of the offending employee's wrongful conduct; (2) that based upon this knowledge, DeVinci's knew, or should have known, that such conduct was a legally wrongful act under Alabama law (i.e., invasion of privacy, and/or assault and battery); and (3) that the employer failed to take adequate steps to remedy the situation.

---

[9] Defendants dispute that this jury instruction should be read to the jury as it is not from the Alabama Pattern Jury Instructions.

Source: *Whitford v. Subline & Associates*, 2:21-cv-00232-KOB; *Stevenson v. Precision Std., Inc.*, 762 So. 2d 820, 824 (Ala. 1999) (citing *Potts v. BE & K Construction Co.*, 604 So. 2d 398 (Ala. 1992)).

## APJI 35: Invasion of Privacy

To successfully establish the tort of invasion of privacy under Alabama law against John Day and/or De Vinci's, Ms. Engler must show to the jury's reasonable satisfaction that John Day intruded into matters of a private nature; that his intrusion was intentional and wrongful; that his intrusion would be so offensive or objectionable that a reasonable person subjected to it would experience outrage, mental suffering, shame or humiliation; and, as to De Vinci's, that De Vinci's is liable for John Day's actions. If Ms. Engler cannot prove each of these elements, De Vinci's and John Day cannot be liable for invasion of privacy.

## APJI 5.01: Assault and Battery

To establish the tort of battery under Alabama Law, Ms. Engler must show that John Day intentionally touched her or her clothes; that this touching was in a harmful or offensive manner; and, as to De Vinci's, that De Vinci's is liable for John Day's actions. If Ms. Engler cannot prove each of these elements to the jury's reasonable satisfaction, De Vinci's and John Day are not liable for battery.

To succeed on a claim of assault, she must show that John Day threatened to touch Ms. Engler, that John Day made the threat in a rude, angry, or hostile manner, that John Day had the apparent ability to carry out the threat, and that under circumstances Ms. Engler had a well-founded fear that John Day would immediately carry out the threat. However, words alone, no matter how abusive, are not an assault. If Ms. Engler cannot prove each of these elements to the jury's reasonable satisfaction, De Vinci's and John Day are not liable for assault.

Respectfully submitted,
/s/ L. William Smith
Jon C. Goldfarb

Jon C. Goldfarb
L. William Smith
Christina Malmat
Lieselotte Carmen-Burks
Counsel for Plaintiff

**OF COUNSEL:**
WIGGINS, CHILDS, PANTAZIS, FISHER,
& GOLDFARB LLC.
The Kress Building
301 19th Street North
Birmingham, Alabama 35203
Telephone No.: (205) 314-0500
Facsimile No.: (205) 254-1500

/s/ Christopher S. Rodgers

Christopher S. Rodgers
Stephanie M. Gushlaw
Counsel for Defendants

**OF COUNSEL:**
LANIER FORD SHAVER
2101 West Clinton Avenue, Suite 102
P.O. Box 2087
Huntsville, AL 35804
Counsel for Defendants