# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | |
|---|---|
| **ANNA ENGLER,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| **v.** | ) **CIVIL ACTION NO.** |
| | ) **2:21-cv-00232-KOB** |
| **DE VINCI's PIZZA, INC.,** *et al.*, | ) |
| | ) |
| **Defendants.** | ) |

# SETTLEMENT AGREEMENT
# AND FULL GENERAL RELEASE

This Settlement Agreement and Full General Release ("Agreement") is made and entered into as of the latest date appearing on the signature pages of this Agreement ("Effective Date") by and between Anna Engler ("**Engler**") and De Vinci's Pizza, Inc. and John A. Day (collectively "**Defendants**") (each individually a "**Party**" and collectively the "**Parties**").

## RECITALS

A.  Engler asserted claims against Defendants in a Lawsuit styled <u>Anna Engler v. DeVinci's Pizza, Inc. et al.</u>, Lawsuit Number: 2:21-CV-00232-KOB, which is currently pending in the United States District Court for the Northern District of Alabama, Southern Division (the "**Lawsuit**");

B.  The claims asserted in the Lawsuit against Defendants included alleged violations of the Fair Labor Standards Act, as well as state-law claims for invasion of privacy and assault and battery;

C.  Defendants denied the material allegations in the Lawsuit and asserted various defenses;

D.  The Parties wish to avoid the time, expense, and diversion of time and effort involved in continuing to litigate the claims in the Lawsuit and wish to resolve same, as well as any and all other claims that Engler may have against Defendants, whether known or unknown, in accordance with the terms and provisions of this Agreement.

## AGREEMENT

In consideration of the mutual promises and covenants contained in this Agreement, and other good and valuable consideration, the Parties agree as follows:

1.  **Recitals.** The Parties acknowledge, represent, and declare that the recitals set forth above are true and correct to the best of their knowledge and belief.

2.  **Payment of Settlement Amount.**

    a.  In exchange for the mutual promises and covenants set forth in this Agreement, Defendants agree to pay the total gross amount of Eighty-Five Thousand Dollars ($85,000.00) (the "**Settlement Amount**") to Jon C. Goldfarb as counsel for Engler, the sufficiency of which is expressly acknowledged by Engler. The Settlement Amount will be paid in three installment payments as set forth in sections 2(a)-(c). The installment payments shall be paid as follows:

      i.    $25,000.00 on or before November 1, 2022 ("**First Installment**");

      ii.    $25,000.00 on or before February 1, 2023 ("**Second Installment**"); and

      iii.    $35,000.00 on or before May 1, 2023 ("**Third Installment**").

The Parties understand and agree that the Settlement Amount is compensatory in nature and includes, but is not limited to, damages of any kind including exemplary damages and interest. Engler and her counsel further agree that the Settlement Amount includes all attorney's fees, costs, or expenses to which they may be entitled in connection with the claims asserted in the Lawsuit and/or under any provision of law or contract.

b.    All payments shall be made by Cashier's Check as follows:

The first two checks due on or before November 1, 2022, shall be made payable directly to Anna Engler in the amounts stated in c (i) and c (ii) below. The remaining two checks totaling $60,000 shall be made payable to Wiggins, Childs, Pantazis, Fisher and Goldfarb.

c.    In particular, the Parties agree that the Settlement Amount will be divided by counsel for Engler as follows:

      i.    $6,563.20 less standard withholdings for taxes and to be reported on a form W-2, for wages Engler alleges is due and owing to her under the FLSA[1];

      ii.    $18,436.80 as settlement of alleged damages with respect to Engler's claim for battery, and for which a form 1099 will issue;

      iii.    $60,000.00 for attorney's fees and costs, which Engler acknowledges is inclusive of all attorney's fees, costs, and expenses to which she is or may be entitled in connection with the claims asserted in the Lawsuit (including those under the FLSA) and/or under any provision of law or contract.

d.    As a condition of receiving the Settlement Amount, Engler agrees that she will be solely responsible for paying any amounts due to any governmental

---

[1] Engler claims she worked approximately 50 hours per week for 13 months (56 weeks). At a rate of $2.13/hour for the first 40 hours, this calculation equals $4,771.20. At a rate of $3.20/hour (1.5 x $2.13 = $3.195) for the additional 10 hours of alleged overtime, this calculation equals $1,792.00. Thus, the sum of alleged backpay and overtime totals $6,563.20.

taxing authority as a result of the payments under this Agreement. Engler has not relied upon any advice from Defendants, and/or any of their respective attorneys, as to the allocation of the payments under this Agreement for any tax or any other purposes, or regarding tax withholding or the ultimate taxability of the payments, whether pursuant to federal, state, or local income tax laws statutes or otherwise.

e. As a condition of the Settlement Amount, Defendants agree to a mortgage on the property located at 2707 18th Street South, Birmingham, Alabama 35209 ("Mortgage") in accordance with the terms set forth in **Exhibit A** to this Agreement. Upon receipt of the Third Installment of the Settlement Amount, Engler or her counsel shall promptly release the Mortgage within a reasonable time not to exceed fourteen (14) days.

f. If Court approval of the settlement agreement is not obtained by November 1, 2022, the Parties agree that the first installment of the Settlement Amount shall be paid within a reasonable time not to exceed fourteen (14) days **after** the Court approves the settlement.

3. **Full General Release.** Engler, in consideration of the covenants contained herein and the payment of the Settlement Amount, hereby releases, acquits, and forever discharges Defendants, and, as applicable, each of their officers, directors, agents, employees, representatives, attorneys, employers, insurers, parent or subsidiary companies, affiliates, and any other person or entity acting by or through them (the "**Released Parties**") from any and all claims, demands, actions, causes of action, suits, rights to reimbursement, rights to payment, counterclaims, charges of discrimination, agreements, promises, damages, attorneys' fees, liabilities, costs, and expenses (collectively, the "**Claims**") of any nature whatsoever, whether legal or equitable, that Engler has or may have in her individual or representative or official capacity, including, without limitation, any Claims arising out of Engler's employment or termination from employment with Defendants (e.g., claims for failure to pay wages, retaliation, discrimination or harassment of any kind under any state of federal anti-discrimination statute or law, based on such things as race, sex, national origin, age, disability or any other protected characteristic, and breach of any contract or employment or similar agreement), as any class representative or member, whether known or unknown, concealed or hidden, suspected or unsuspected, against the Released Parties, or against any other person or entity, arising out of or relating to any matter, transaction, practice, policy, event, act, or failure to act that occurred at any time in the past through and including the Effective Date of this Agreement, including, but not limited to, any Claims that were or could have been raised in the Lawsuit, any Claims related to or arising under any agreements, including any employment agreements, which Engler ever had, now has, or shall have against the Released Parties.

4. **Denial of Liability or Wrongdoing.** The Parties understand and agree that this is a settlement and compromise of doubtful and disputed claims and is not to be considered any admission of liability by Defendants. To the contrary, it is understood and agreed that Defendants generally deny any and all liability to Engler and specifically deny the validity of Engler's claims in the Lawsuit.

5. **Eligibility for Rehire.** Engler agrees not to seek employment with Defendants.

6. **Entire Compensation.** The Parties agree that the Settlement Amount shall constitute the entire monetary consideration in full and complete satisfaction of any and all Claims, demands, and/or causes of action which were or could have been asserted by, between, or among the Parties in the Lawsuit. The Parties agree that they would not receive the rights and benefits hereunder if they did not make the promises contained in this Agreement. By the execution of this Agreement, Released Parties are hereby released from all Claims for liability asserted in the Lawsuit or which could have been asserted in the Lawsuit, as well as any Claims for liability or damages of any kind concerning any other matter, whether or not currently pending in any court, administrative agency, arbitral forum or any governmental agency. Provided, however, that nothing in this Agreement limits the rights of any governmental agency or prevents Engler from communicating with, filing a charge or complaint with, cooperating with, or otherwise participating in an investigation or proceeding conducted by any federal, state or local agency charged with the enforcement of any laws. However, by signing this Agreement, Engler is waiving rights to individual relief (including any monetary, legal or equitable relief of any kind) in any proceeding brought by Engler or on Engler's behalf by any third party.

7. **Confidentiality.** The Parties understand and agree that the terms and substance of this Agreement shall be kept confidential by them. Accordingly, the Parties agree that they will not at any time disclose, reveal, or divulge to any person or entity whatsoever, orally or in writing, other than appropriate governmental taxing authorities, accountants, financial advisors, attorneys, and immediate family members, the terms of this Agreement, including, but not limited to, the Settlement Amount and the nature and scope of the full general release. The above-described persons and entities to whom the Parties are allowed to reveal the terms of this Agreement shall be notified of these confidentiality provisions and instructed to adhere thereto. Furthermore, in response to any inquiry concerning the Lawsuit or the settlement of the Lawsuit, the Parties agree to state only that "the matter has been resolved." Provided, however, nothing in this Agreement prohibits or is intended to prohibit the Parties from reporting possible violations of federal, state, or local law or regulation to any governmental agency or entity, including but not limited to the EEOC and the Department of Labor, or from making other disclosures that are protected under the whistleblower provisions of any law or regulation.

8. **Non-Disparagement.** Except as otherwise provided in sections 6 and 7 above, the parties agree that they will not at any time make, publish, or communicate to any person or entity or in any public forum, including online or through social media, orally or in writing, any defamatory, disparaging, untrue, or misleading remarks, comments, or statements about or relating to the other parties, and, as applicable, its or their products, services, or capabilities, and/or its or their officers, directors, shareholders, agents, employees, suppliers, or customers. Provided, however, nothing in this provision is intended to prohibit communications protected under the Alabama Non-Disparagement Obligations Act.

4

9. **Procedure for Approving Settlement.**

   a. **Joint Motion for Approval of Settlement**

      i. The Parties will jointly move for an order giving Approval of the Settlement (the "**Joint Motion**"). The Joint Motion shall not be filed until counsel for the Parties have reviewed and approved the Joint Motion, which approval will not be unreasonably withheld.

      ii. In the event the Court requires a hearing on the Motion for Approval, the Parties will jointly appear through counsel, support the granting of the motion, and submit an order granting approval of the Settlement;

      iii. In the unlikely event that Court refuses to approve or approves some but not all material aspects of the Settlement, the Parties promptly will engage in good faith meet and confer discussions to cure any and all defects. If such defects are not cured following good faith meet and confer efforts of the Parties, the Settlement will be null and void and the Parties will have no further obligations under it.

10. **Dismissal of Lawsuit.** Within five (5) days of receipt of the Final Installment Settlement Amount or as otherwise ordered by the Court, Engler will take all actions necessary to effect the prompt dismissal, with prejudice, of her claims against Defendants in the Lawsuit with costs (including attorney's fees) taxed as paid.

11. **Mutual Full Cooperation.** The Parties agree to cooperate with each other fully to accomplish the terms of this Agreement, including but not limited to: (a) executing such documents and taking such other actions as reasonably may be necessary to implement the terms of this Agreement; (b) continuing good faith efforts to effectuate settlement in the unlikely event the Court should deny approval of the Joint Motion. The Parties to this Agreement shall use their best efforts, including all efforts contemplated by this Agreement and any other efforts that may become necessary by order of the Court, or otherwise, to effectuate this Agreement and the terms set forth herein.

13. **No Assignment of Claims.** The Parties represent and warrant that they have not assigned or otherwise transferred to any person, party, or entity any of the claims, demands, actions, liabilities, obligations, or causes of action being released hereby.

14. **Attorney's Fees.** If it becomes reasonably necessary for the Parties to retain counsel for the purpose of enforcing or preventing the breach of any provision of this Agreement, including, but not limited to, instituting any action or proceeding to enforce any of its provisions for damages by reason of any alleged breach of any of its provisions, or for a declaration of rights or obligations under it, or for any other judicial remedy, the prevailing Party shall be entitled to recover from the non-prevailing Party all reasonable costs and expenses incurred by them, including, but not limited to, reasonable attorney's fees, as proven in a court of competent jurisdiction.

5

15. **Applicable Law.** This Agreement is deemed created and executed within the state of Alabama, and is to be governed, construed, interpreted, and enforced in accordance with laws of the state of Alabama.

16. **Binding Agreement.** This Agreement shall be binding upon, and shall inure to the benefit of, the Parties, and, as applicable, their respective heirs, representatives, successors, and/or assigns.

17. **Voluntary Agreement.** Engler represents and warrants that she has carefully read this Agreement and completely understand its terms, conditions, and effect. Additionally, Engler represents and warrants that she has signed this Agreement freely and voluntarily, and that in executing same she has not been influenced by any person or entity to any extent whatsoever.

18. **Independent Advice of Counsel.** Engler represents and warrants that she is deliberately executing this Agreement, and that in doing so she is relying solely upon her own judgment, belief, and knowledge, as well as upon the advice and recommendations of her own independently-selected counsel, concerning the terms of this Agreement as well as her rights and duties under it.

19. **Interpretation of Agreement.** The Parties agree that this Agreement shall be interpreted according to the plain and ordinary meaning of its terms. Additionally, the Parties agree that each participated equally in the negotiation and drafting of this Agreement, and consequently, no inference shall be drawn that this Agreement was prepared by any particular party and no ambiguity shall be construed against any particular party.

20. **Entire Agreement.** This Agreement constitutes the entire agreement of the Parties, and it supersedes any prior understandings, agreements, or representations by or among the Parties to the Agreement, written or oral, to the extent they are related in any way to the subject matter of this Agreement.

21. **Severability.** If any provision of this Agreement is deemed to be invalid or unenforceable under applicable law, this Agreement shall be considered divisible as to such provision and the same shall thereafter be inoperative; provided, however, the remaining provisions of this Agreement shall be valid and enforceable notwithstanding.

22. **Modification.** No oral modification of this Agreement shall be deemed valid or enforceable under any circumstances. Instead, all modifications of this Agreement shall be in writing and signed by the Parties or by their respective attorneys.

23. **Counterparts.** This Agreement may be executed in one or more counterparts. In this event, this Agreement shall not become effective and binding upon the Parties until such time as all of the signatories have signed a counterpart. The Parties agree that signatures may be scanned and circulated by facsimile, email, or other means of electronic transmission, which will have the same legal effect as an original signature. The Parties need not maintain actual original signatures.

**24.     Further Assurances.** The Parties shall execute and deliver any other documents and/or instruments and shall take any other actions as may be reasonably required or appropriate to evidence or carry out the intent and purposes of this Agreement.

**25.     Paragraph Headings.** The paragraph headings contained in this Agreement are inserted for convenience only and shall not affect in any way the meaning or interpretation of this Agreement.

[SIGNATURE PAGES TO FOLLOW]

**IN WITNESS WHEREOF,** Anna Engler has executed this Agreement as of the date written below.

_____
Anna Engler

Date: __10/13/2022__

8

**IN WITNESS WHEREOF,** De Vinci's Pizza, Inc. has executed this Agreement as of the date written below.

                                             **DE VINCI'S PIZZA, INC.**

By: _Tracene E. Day_

Its: Owner

Date: 10/14/22

**IN WITNESS WHEREOF,** John A. Day has executed this Agreement as of the date written below.

_____
John A. Day, Individually

Date: _____10/14/2022_____

**APPROVED AS TO**
**FORM AND CONTENT:**

_/s/ Jon C. Goldfarb_
Jon C. Goldfarb
L. William Smith
Christina M. Malmat
Lieselotte Carmen-Burks

**Attorneys for plaintiff Anna Engler**

**OF COUNSEL:**

**WIGGINS, CHILDS, PANTAZIS,**
**FISHER & GOLDFARB, LLC**
301 19th Street North
Birmingham, Alabama 35203
Telephone: (205) 314-0500
Facsimile: (205) 254-1500
Email: jcg@wigginschilds.com
wsmith@wigginschilds.com
cmalmat@wigginschilds.com
lcarmen-burks@wigginschilds.com

_/s/ Christopher S. Rodgers_
Christopher S. Rodgers
Stephanie M. Gushlaw

**Attorneys for defendants De Vinci's Pizza, Inc. and John A. Day**

**OF COUNSEL:**

**LANIER FORD SHAVER & PAYNE P.C.**
Post Office Box 2087
Huntsville, Alabama 35804
Telephone Number: (256) 535-1100
Facsimile Number: (256) 533-9322
Email: csr@lanierford.com
smg@lanierford.com

11